COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Humphreys and Kelsey
Argued at Richmond, Virginia


CITY OF NEWPORT NEWS
 DEPARTMENT OF SOCIAL SERVICES
                                            OPINION BY
v.    Record No. 2631-02-1          JUDGE ROBERT J. HUMPHREYS
                                          MAY 20, 2003
JEANETTE WINSLOW


                FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
                         Edward L. Hubbard, Judge

            Allen L. Jackson, Chief Deputy City Attorney
            (Christina A. Walsh, Assistant City Attorney,
            on brief), for appellant.

            Paul H. Wilson for appellee.

            Richard H. Lewis, Jr., Guardian ad litem for
            the minor children.


     The City of Newport News Department of Social Services (DSS)

appeals a decision of the trial court, striking DSS's evidence in

a proceeding to terminate Jeanette Winslow's residual parental

rights to her two youngest children.  DSS contends that the trial

court erred in relying on Code § 16.1-283(B), as opposed to Code

§ 16.1-283(C)(2), in support of its determination.  In the

alternative, DSS argues that the trial court erred in determining

that it failed to establish, by clear and convincing evidence,

that Winslow's residual parental rights should be terminated

pursuant to Code § 16.1-283(C)(2).  For the reasons that follow,

we reverse and remand for further proceedings consistent with this opinion.[1]

## I.   Background

DSS initially removed Winslow's children from her home in July of 1998.  DSS removed the children because of the extremely poor condition of Winslow's home and Winslow's apparent inability, due to a bi-polar disorder and obsessive compulsive personality disorder, to accept responsibility for the condition of the home and the resulting danger posed to her children.  On December 28, 2001, after several years of working with Winslow and her children, DSS filed permanency plans with the goal of adoption and petitions to terminate Winslow's residual parental rights with the Newport News Juvenile and Domestic Relations District Court (J&DR court).  The petitions and permanency plans alleged:

> The parents, without good cause, have been
> unwilling or unable with [sic] a reasonable
> period not to exceed twelve month [sic] to
> remedy substantially the conditions which
> led to the child's foster care placement,
> notwithstanding the reasonable and
> appropriate efforts of social, medical,
> mental health or other rehabilitative

---

[1] On April 10, 2003, we granted Winslow's motion for leave to file a "late reply brief" and allowed her counsel to present oral argument.  During her oral argument, Winslow withdrew her motion to dismiss, filed with this Court on April 4, 2003.

> agencies to such end.  (Virginia Code
> Section 16.1-283[C](2) [sic][2]

On March 4 and 5, 2002, the J&DR court heard evidence on the petitions.  On April 24, 2002, the court approved the goal of adoption and terminated Winslow's parental rights to the children finding that, pursuant to "Code § 16.1-283(C)," Winslow:

> without good cause, has been unwilling or
> unable within a reasonable period of time
> not to exceed twelve months from the date
> the child was placed in foster care to
> remedy substantially the conditions which
> led to or required continuation of the
> child's foster placement, notwithstanding
> the reasonable and appropriate efforts of
> social, medical, mental health or
> rehabilitative agencies to such end.

Winslow subsequently appealed the J&DR court's order to the circuit court (trial court) for a de novo review.  On June 28, 2002 and September 27, 2002, the trial court heard evidence on the matters.  DSS presented several witnesses having knowledge of the circumstances.  At the close of DSS's evidence, Winslow raised a motion to strike contending that DSS failed to prove,

> by clear and convincing evidence, that not
> only is it in the best interest of the
> children that the parental rights be
> terminated, but also that the mother through
> the abuse and neglect place [sic] the
> children in serious, substantial threat to
> their life, health, and development, and
> that it's not reasonably likely that the

---

[2] The petitions also sought to terminate the residual parental rights of each of the children's fathers.  There is no issue in the present appeal with regard to the termination of the fathers' rights.  Therefore, we do not address these matters further.

-

> conditions which resulted in that neglect or
> abuse can be substantially corrected or
> eliminated so as to allow the deficiency to
> be gone [sic].

DSS responded, stating that:

> the Code allows the City to proceed on any
> of the sections in 16.1-283, and the City
> has chosen to proceed on Section C-2,
> wherein, the mother has without good cause
> been unable within a reasonable period of
> time not to exceed 12 months from the date
> the children came into care, to remedy
> substantial [sic] any conditions that places
> the children in foster care placement
> despite the efforts of Newport News
> Department of Social Services.

After hearing the arguments, the trial court granted the

motion, finding:

> a child is not entitled to the best mother
> on earth.  A child is entitled to their
> birth parent unless it causes irremediable
> harm to them.
>
> There's no doubt at the time [the children]
> were removed that the department of social
> services was absolutely correct.  I don't
> think the mother would dispute that knowing
> what she knows now, that there was a serious
> threat to their life, health or development
> living in that milieu in which they lived.
>
> But the question before the Court today is
> [sic] not reasonably likely that those
> conditions which resulted in their neglect
> and abuse at that time can be substantially
> corrected or eliminated [sic].  And, see, we
> also when these cases go on like that, we
> also lose sight of the fact that it's the
> original abuse and neglect that we're
> concerned with, not what's happened from
> intervening causes such as sexual abuse or
> other placements or what's happened at other
> places.  She can't be expected – she's never
> been expected to remedy those situations.

-

> She's always been asked to remedy those situations that were there present when she lost the children, and I can't see by clear and convincing evidence that it's not reasonably likely that those conditions could be substantially corrected. I'm going to grant the motion.

(Emphases added). The trial court issued its written order, nunc pro tunc on October 24, 2002, which stated as follows, in relevant part:

> This matter came to be heard on September 27, 2002. The parties having last appeared before the Court on June 28, 2002 for Jeanette Winslow's appeal of the Newport News Juvenile and Domestic Relations District Court order, dated April 18, 2002, terminating her residual parental rights to the above-named children, pursuant to § 16.1-283(C)(2) of the Code of Virginia.
>
> \*   \*   \*   \*   \*   \*   \*
>
> Upon consideration, the Court FINDS the evidence insufficient as a matter of law to sustain the termination of parental rights petition filed by the Newport News Department of Social Services. WHEREFORE, the Court GRANTS the motion to strike the evidence and the petition to terminate the residual parental rights of Jeanette Winslow is HEREBY dismissed and remanded to the Newport News Juvenile and Domestic Relations District Court.

## II. Analysis

On appeal, DSS contends the trial court erred in granting the motion to strike, because in so doing it failed to "apply the standard contained in § 16.1-283(C)(2)" and instead "improperly applied the standard contained in § 16.1-283(B)." In the alternative, DSS contends the trial court erred in finding it

-

failed to establish, by clear and convincing evidence, that Winslow's residual parental rights should be terminated pursuant to Code § 16.1-283(C).

We first note that "[a]bsent clear evidence to the contrary in the record, the judgment of a trial court comes to us on appeal with a presumption that the law was correctly applied to the facts." Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977). Furthermore, the Supreme Court of Virginia has consistently "stated that 'it is the firmly established law of this Commonwealth that a trial court speaks only through its written orders.'" Walton v. Commonwealth, 256 Va. 85, 94, 501 S.E.2d 134, 140 (1998) (quoting Davis v. Mullins, 251 Va. 141, 148, 466 S.E.2d 90, 94 (1996)). Appellate courts thus "presume" that the trial judge's order "accurately reflects what transpired" during the proceedings below. Stamper v. Commonwealth, 220 Va. 260, 280-81, 257 S.E.2d 808, 822 (1979).

Code § 16.1-283 establishes the procedures and grounds under which a court may order the termination of residual parental rights. The statute provides as follows, in relevant part:

> B. The residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment; (ii) an entrustment agreement entered into by the parent or parents; or (iii) other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

-

1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. . . .

\*      \*      \*      \*      \*      \*      \*

C. The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

\*      \*      \*      \*      \*      \*      \*

2. The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. . . .

Code § 16.1-283(B) and (C)(2) (emphases added).

Both subsection (B) and subsection (C)(2) of Code § 16.1-283 address substantially similar grounds for the termination of parental rights.  See Richmond Dept. of Soc. Servs. v. L.P., 35 Va. App. 573, 583, 546 S.E.2d 749, 754 (2001).  However, Code § 16.1-283(B) speaks prospectively, as to the ability of the

-

parent or parents to "substantially" remedy, "within a reasonable period of time," the conditions which led to the foster care placement. Conversely, Code § 16.1-283(C)(2) is retrospective in nature, focusing on whether the parent or parents "have been []willing or []able within a reasonable period of time not to exceed twelve months," to "remedy substantially" the conditions which led to the foster care placement.

Despite these distinctions, we have previously upheld terminations under both subsections of Code § 16.1-283, as well as under one or either of the individual subsections. See Ferguson v. Stafford County Dep't of Soc. Serv., 14 Va. App. 333, 340, 417 S.E.2d 1, 5 (1992) (upholding the trial court's decision to terminate residual parental rights pursuant to Code § 16.1-283(B) and (C)(1)); Lowe v. Dept. of Public Welfare, 231 Va. 277, 281-82, 343 S.E.2d 70, 73 (1986) (upholding termination of residual parental rights pursuant to Code § 16.1-283(B)(2)); and Lecky v. Reed, 20 Va. App. 306, 313-14, 456 S.E.2d 538, 541 (1995) (ordering termination of residual parental rights pursuant to Code § 16.1-283(C)). Furthermore, each subsection, although similar in nature, is written as a distinct and grammatically independent provision of the statute. Accordingly, it is clear that Code § 16.1-283(B) and (C)(2) set forth individual bases upon which a petitioner may seek to terminate residual parental rights.

Here, the record clearly reflects that DSS sought termination of Winslow's residual parental rights based upon Code

-

§ 16.1-283(C)(2), not § 16.1-283(B). In fact, DSS pointed the trial court to this subsection of the statute in its response to Winslow's motion to strike. Moreover, both foster care plans, filed in conjunction with the termination petitions, state specifically that they are based upon Code § 16.1-283(C).[3] Indeed, the juvenile and domestic relations district court relied upon Code § 16.1-283(C), as reflected in its written orders of April 24, 2002, in terminating Winslow's residual parental rights after the district court proceedings.

Nevertheless, in support of her motion to strike, Winslow argued that DSS failed to demonstrate that Winslow, "through the abuse and neglect place [sic] the children in serious, substantial threat to their life, health, and development, and that it's not reasonably likely that the conditions which resulted in that neglect or abuse can be substantially corrected or eliminated so as to allow the deficiency to be gone [sic]." Winslow's argument in this regard clearly tracked the bases of proof necessary to establish termination pursuant to Code § 16.1-283(B), as opposed to those necessary to establish termination pursuant to Code § 16.1-283(C)(2).

In response, the trial court found "I don't think [Winslow] would dispute that knowing what she knows now, that there was a

_____

[3] We note that although the Appendix on appeal contains a copy of both foster care plans (dated December 28, 2001), only one plan appears in the circuit court's record.

-

serious threat to their life, health or development living in that milieu in which they lived," and "I can't see by clear and convincing evidence that it's not reasonably likely that those conditions could be substantially corrected."  The trial court's written order notes that the juvenile and domestic relations district court granted the termination pursuant to Code § 16.1-283(C)(2), but merely states that, after hearing the matter de novo, it found the "evidence insufficient as a matter of law to sustain the petition filed by" DSS.

Based upon the trial court's statements during the hearing, and because we discern no guidance from its broadly written final order, we find that the trial court improperly applied the law to the facts in this case.  The trial court first made a factual finding concerning the initial threat to the "life, health, [and] development" of the children and then made a prospective determination, finding that it was "not reasonably likely that" Winslow could substantially remedy those conditions.  As set forth above, these criteria are pertinent to a finding pursuant to Code § 16.1-283(B), not to a finding pursuant to Code § 16.1-283(C)(2). Furthermore, there is no ambiguity created between the trial court's statements in the transcript and its written order.  See Commonwealth v. Williams, 262 Va. 661, 668, 553 S.E.2d 760, 763 (2001) (noting that the maxim that "a court speaks only through its written orders" "generally refers to instances when some conflict or ambiguity exists between the language expressed in a

-

transcript and a court's order, when an order fails to reflect an action allegedly taken by one or more parties, or when a court's order fails to reflect compliance with a jurisdictional requirement"). Indeed, the written order fails to state which subsection the trial court relied upon to sustain its finding.

Accordingly, we reverse the decision of the trial court, granting Winslow's motion to strike under the guise of Code § 16.1-283(B).[4] We further remand this matter for additional proceedings consistent with this opinion.

<u>Reversed and remanded.</u>

---

[4] Because we have found that the trial court improperly relied upon Code § 16.1-283(B) in reaching its determination, we do not reach DSS's alternative argument that the trial court erred in failing to find DSS established the necessary elements of proof under Code § 16.1-283(C)(2).

-