COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Fulton, Friedman and Raphael
Argued at Lexington, Virginia


DESIREE VALENCIA OSBY (LUCAS)

v.      Record No. 0305-22-3

DEPARTMENT OF SOCIAL SERVICES OF
  ALLEGHANY COUNTY                                MEMORANDUM OPINION* BY
                                                 JUDGE FRANK K. FRIEDMAN
DESIREE VALENCIA OSBY (LUCAS)                            MAY 30, 2023

v.      Record No. 0306-22-3

DEPARTMENT OF SOCIAL SERVICES OF
  ALLEGHANY COUNTY


FROM THE CIRCUIT COURT OF ALLEGHANY COUNTY
Edward K. Stein, Judge

Charles S. Moore for appellant.

Matthew J. Schmitt (Jared R. Jenkins; Jeffrey A. Crackel, Guardian
ad litem for the minor children; Mann Legal Group, PLLC, on brief),
for appellee.


Desiree Valencia Osby (Lucas) ("mother") appeals the circuit court's orders terminating her

parental rights under Code § 16.1-283(B).  Mother argues that the circuit court erred in denying her

motion to strike because the Department of Social Services of Alleghany County ("the

Department") did not offer her reasonable and appropriate services or visitation, which prevented

her from being able to correct substantially the conditions that would allow the children's safe

return home.  Mother further asserts that the circuit court erred in finding that the evidence was

---

* This opinion is not designated for publication.  *See* Code § 17.1-413.

sufficient to support a termination of her parental rights. We find no error and affirm the circuit court's judgment.

## BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 550-51 (2018) (quoting *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 168 (2014)). Here, the Department was the prevailing party, so we recite the evidence, and the inferences flowing from it, in the light most favorable to the Department.

Mother is the biological parent to M.L.G.-O. and C.I.O., who are the subject of these appeals. In June 2020, the Department received a report that C.I.O. had broken another child's phone, and in response, mother had "punched [C.I.O.] in the chest, possibly near the throat area." Mother admitted that there were "scratch marks" on C.I.O. and suggested that they were from the pet rabbit or cat. After being charged with criminal offenses that arose from the incident, mother pleaded guilty to strangulation and felony child abuse.

On July 1, 2020, the Department removed the children from mother's custody and placed them temporarily with relatives. At the time, M.L.G.-O. was nine years old and C.I.O. was six

---

[1] The record in these cases was sealed. Nevertheless, the appeals necessitate unsealing relevant portions of the record to resolve the issues mother has raised. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

years old.[2]  The children subsequently entered foster care and have been with the same foster family since November 2020.

After the children entered foster care, the Department set requirements mother had to meet before she could be reunited with the children.  The Department referred mother for a psychological/parenting capacity evaluation, which mother completed in January 2021.  The evaluator diagnosed mother with post-traumatic stress disorder, pervasive depressive disorder, bipolar II disorder, and cannabis abuse.[3]  The evaluator opined that mother's "parenting style tends to be aggressive and authoritarian, with harsh, blaming overtones when the children misbehave or do not comply."  The evaluator recommended "extended parent coaching and repeated demonstration" to develop mother's parenting skills.  The evaluator further recommended that mother participate in outpatient therapy, family therapy, and medication management.  The Department did not refer mother to any services after the psychological evaluation; however, it informed mother that she could seek counseling with the community services board.

The Department initially offered mother supervised in-person visitation with the children.  But when the in-person visits became too upsetting for the children, the Department suspended them and offered supervised telephone contact instead.  After learning that mother was behaving inappropriately during the telephone calls, the Department warned her that it would suspend her contact with the children if her behavior did not improve.

---

[2] Mother reported that M.L.G.-O. and C.I.O. had been diagnosed with attention deficit hyperactivity disorder; C.I.O. also had been diagnosed with autism.

[3] Mother reported that she previously had been hospitalized for "depression with self-harm, bipolar disorder, anxiety, and Posttraumatic Stress Disorder."  She also reported taking several medications for her psychiatric diagnoses.

In November 2020, the children started counseling, and thereafter, the therapist became concerned that the children's contact with mother was causing them anxiety and triggering "disruptive behaviors." The therapist advised the Department to suspend the visitations "indefinitely," which it did in March 2021. Although mother continued to maintain contact with the Department thereafter, she did not inquire about resuming contact with the children.

On December 1, 2021, the juvenile and domestic relations district court ("JDR court") terminated mother's parental rights to the children and approved the foster care goal of adoption. Mother appealed the JDR court's rulings to the circuit court.

When the parties appeared before the circuit court, the Department presented evidence that the children were "doing well" in their foster care placement. The children's counselor testified that he did not believe that family therapy would be in the children's best interests. He explained that because of the children's history and circumstances, "it would likely take at least one year of individual counseling with the children before they would feel safe being in [mother's] presence." The children's counselor acknowledged that "the termination of contact between [mother] and the children combined with the lack of family therapy would make reunification . . . impossible."

At the conclusion of the Department's evidence, mother moved to strike; the circuit court denied mother's motion. Mother testified about her efforts to secure individual counseling and anger management on her own. She then renewed her motion to strike and argued that the circuit court should not terminate her parental rights because any failure on her part to remedy the conditions that led to the children's placement into foster care was due to the Department's "failure or refusal to allow contact with the children and failure or refusal to make the appropriate referrals." The Department and the guardian ad litem argued that it was in the children's best interests to terminate mother's parental rights. After hearing the evidence and

- 4 -

arguments, the circuit court rejected mother's arguments and terminated her parental rights under Code § 16.1-283(B). Mother appeals.

ANALYSIS

Mother challenges the circuit court's order terminating her parental rights to M.L.G.-O. and C.I.O. "On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Castillo v. Loudoun Cnty. Dep't of Fam. Servs.*, 68 Va. App. 547, 558 (2018) (quoting *Logan v. Fairfax Cnty. Dep't of Hum. Dev.*, 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011) (quoting *Martin v. Pittsylvania Cnty. Dep't of Soc. Servs.*, 3 Va. App. 15, 20 (1986)).

The circuit court terminated mother's parental rights under Code § 16.1-283(B), which authorizes the court to terminate an individual's parental rights if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

Mother argues that the circuit court erred in terminating her parental rights because the Department refused to provide her with recommended referrals and suspended her visitation with

the children.[4]  She emphasizes that she participated in the required psychological evaluation, which "made several constructive recommendations to facilitate reunification," but the Department failed to make the necessary referrals.  Moreover, the children's counselor acknowledged that reunification would "not be possible" if mother had no contact with the children and they were not engaged in family therapy.  Mother asserts that the circuit court erred in denying her motion to strike because the Department had "made no reasonable efforts" to provide her with the recommended services for reunification.

"Code § 16.1-283(B) requires only that the circuit court consider whether rehabilitation services, if any, have been provided to a parent.  Nothing in Code § 16.1-283 or the larger statutory scheme requires that such services be provided in all cases as a prerequisite to termination under subsection B."  *Eaton v. Washington Cnty. Dep't of Soc. Servs.*, 66 Va. App. 317, 327-28 (2016) (quoting *Toms v. Hanover Dep't. of Soc. Servs.*, 46 Va. App. 257, 268 (2005)).  Indeed, Code § 16.1-283(B) does not "mandate that a public or private agency provide any services to a parent after the child enters foster care."  *Toms*, 46 Va. App. at 269 (quoting Kate D. O'Leary, *Termination of Parental Rights in Virginia*, 17 J. Civ. Litig. 17 (2005)).  Even though the Department was not required to offer services to mother, it did refer her for a psychological/parenting capacity evaluation and offered her supervised visitation for several months, until it determined that the visitation was detrimental to the children.  Thus, the circuit court did not err in denying mother's motion to strike because the Department had failed to provide "reasonable and appropriate" services to her.

Mother also argues that the lack of services and visitation meant "there was not enough information regarding [her] ability to remedy the conditions that brought the children into care."

___

[4] Mother does not challenge the finding that the abuse the children suffered posed a "serious and substantial threat" to their lives, health, and development.  *See* Code § 16.1-283(B)(1).

- 6 -

As noted above, the Department was not required to offer services to mother. The statute "'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." *Toms*, 46 Va. App. at 270-71 (quoting *City of Newport News Dep't of Soc. Servs. v. Winslow*, 40 Va. App. 556, 562-63 (2003)). "Virginia's jurisprudence recognizes that 'past actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" *C. Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 425 (2012) (quoting *Winfield v. Urquhart*, 25 Va. App. 688, 695-96 (1997)); *see also Geouge v. Traylor*, 68 Va. App. 343, 375 (2017).

The circuit court considered evidence of mother's initiative to seek "personal therapy" and "anger management counseling." Balanced against mother's efforts to improve, the court heard troubling evidence regarding mother's behaviors and actions toward the children. According to the children's counselor, the children had been exposed to trauma for "years." Mother had been convicted of strangulation and felony child abuse after she had "punched" C.I.O. in the chest, as punishment for breaking a cell phone.

After the children entered foster care, mother continued to engage in "inappropriate" behavior, including threats of physical violence. For example, during a telephone visit, mother told the children that she would have hit C.I.O. if she were there because she thought he was misbehaving. Their counselor testified that it would take "at least one year" of counseling before they would feel safe in mother's presence. M.L.G.-O. initially "struggled with aggression," which dissipated after counseling, placement in her current foster home, and cessation of visits with mother. C.I.O. was so traumatized that he refused to speak with mother during visitations. Considering the totality of the circumstances, the circuit court did not err in finding that it was in the children's best interests to terminate mother's parental rights.

CONCLUSION

For the foregoing reasons, the circuit court did not abuse its discretion in terminating mother's parental rights under Code § 16.1-283(B). The circuit court's judgment is affirmed.

*Affirmed.*